**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

K&A ROSARIO HOLDINGS, LLC and
MJR FUND I, INC.,

Plaintiffs,

v.

CASE NO.: 6:26-cv-1337-CEM-LHP

FIRST HORIZON BANK,

Defendant.

**OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS AMENDED COMPLAINT AND MOTION TO STRIKE**

Plaintiffs, K&A ROSARIO HOLDINGS, LLC and MJR FUND I, INC., hereby file their Opposition to Defendant's Partial Motion to Dismiss Amended Complaint and Motion to Strike (DE 39).

**I. Defendant's Motion to Strike should be denied.**

Defendant asks the Court to strike paragraph 16–26 and 51 of the Amended Complaint because they are (according to Defendant) "immaterial and impertinent allegations" because the "Amended Complaint does not plead any claim premised on prior knowledge" and, therefore, the allegations "have no relevance to Plaintiffs' claims." Mot. (DE 39) at pp. 6, 14.

The applicable statute, the applicable case law, and the parties' contracts unequivocally defeat Defendant's argument.

### A. Section 670.202, the applicable case law, and the parties' contracts expressly make Defendant's knowledge relevant.

Count I (titled "Reimbursement Pursuant to Fla. Stat. § 670.202") is based upon Section 670.202. *See* Am. Compl. (DE 36) at p. 15.

Section 670.202 expressly makes Defendant's knowledge relevant in two separate ways: (1) Defendant must "prove[] that it accepted the payment order ***in good faith*** and in compliance with the bank's obligations"; and (2) "[t]he commercial reasonableness of a security procedure is a question of law to be determined by considering … the circumstances of the customer known to the bank … and ***security procedures in general use by customers and receiving banks similarly situated***. Fla. Stat. § 670.202(2), (3) (emphasis added).

The subject allegations establish that within three months before processing transfers from Plaintiff's accounts, Defendant (a) knew that a fraud was perpetrated against its customer via a suspicious phone call claiming to have a "new phone" and requesting a new token; (b) knew that two of its customers were the target of millions of dollars in fraudulent transfers to unknown offshore accounts; (c) knew the identity of the offshore accounts that received fraudulent transfers. *See* Am. Compl. at ¶¶ 16–26, 51.

With this knowledge, Defendant received another suspicious phone call (less than three months after the previous one) and again processed transfers to

the same offshore accounts that Defendant already knew were the recipients of millions of dollars of prior fraudulent transfers. *Id.* at ¶¶ 34, 50, 51.

Certainly, Defendant's knowledge of the ongoing circumstances of its own customers and knowledge that Defendant very recently processed millions of dollars in fraudulent transfers to specific fraudulent offshore accounts are relevant to the questions of whether Defendant acted in good faith and/or whether Defendant's security procedures were commercially reasonable when it yet again processed millions of dollars in fraudulent transfers to the same fraudulent offshore account.

"[The] failure to implement additional procedures [is] especially unreasonable in light of ***the bank's knowledge*** of ongoing fraud. As early as 2008, [the] Bank had received notification of substantial increases in internet fraud involving keylogging malware. By May 2009, [the] Bank had ***itself experienced at least two incidents of fraud on the bank's system*** which it attributed to either keylogging malware or internal fraud. In both instances, the perpetrators had acquired and successfully applied the customer's passwords, IDs, and answers to challenge questions. Thus, by May 2009, when the fraud in this case occurred, ***it was commercially unreasonable*** for [the] Bank's security system to trigger nothing more than what was triggered …. These collective failures, taken as a whole, rendered [the] Bank's security procedures commercially unreasonable. We reverse

the district court's grant of summary judgment as to Count I." *Patco Const. Co., Inc. v. People's United Bank*, 684 F.3d 197, 213 (1st Cir. 2012) (emphasis added).

As to the parties' contracts, the Treasury Management Services Master Agreement (DE 36-2) provides that Defendant had discretion to "delay and/or refuse to process any … transaction … [that Defendant], in good faith, believes … is not genuine or authorized" or if Defendant "suspects a possible breach of a Security Procedure or … suspects is being used for, or is the target of, fraudulent or illegal activity." Treasury Mgmt. Servs. Master Agr. (DE 36-2) at § 15.2. In other words, the parties' contracts also expressly make Defendant's knowledge relevant. Specifically, the parties' contracts make relevant Defendants' knowledge and suspicions of breaches in security procedures and "fraudulent or illegal activity" targeted at Defendant's customers. This is precisely the type of "knowledge" and "suspicion" that are the subject of paragraphs 16–26 and 51 of the Amended Complaint.

### B. Defendant does not even attempt to meet its burden of establishing that paragraph 16–26 and 51 (i) have no possible relation to the controversy or (ii) would cause any prejudice.

In any event, "[r]elief under Rule 12(f) is granted sparingly and generally disfavored by Courts. … A motion to strike will usually be denied unless the material has no possible relation to the controversy and may cause prejudice to

one of the parties." *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 700 (S.D. Fla. 2013).

There is, of course, a very clear relation between (a) Defendant's knowledge of almost-identical fraudulent schemes perpetrated against their own customers mere months before, and (b) the reasonableness and good faith of Defendant's actions when it again allowed itself to fall for the same scheme with regard to Plaintiffs' accounts.

Moreover, Defendant does not even attempt to argue that the subject allegations are, in any way, prejudicial. At most, Defendant merely asserts that the allegations "cause prejudice" without explanation. *See* Mot. (DE 39) at p. 13. When a party's "contentions in support of his motion [to strike] are largely boilerplate, conclusory assertions without legal or factual support," then such motions are generally denied. *Brown v. Santander Consumer USA, Inc.*, No. 1:25-CV-3184-ELR-AWH, 2025 WL 4438992, at *2 (N.D. Ga. Dec. 31, 2025).

For the above reasons, Defendant's Motion to Strike should be denied.

## II. Defendant's Motion to Dismiss should be denied.

### A. Count II sufficiently alleges breach of contract.

Defendant first argues that Count II for breach of contract fails because it did not "identify any contractual provision imposing obligations to prevent fraudulent transactions." Mot. (DE 39) at p. 2.

Defendant is plainly wrong.

The parties' contractual agreements (in their own words) confirm that the parties "established certain processes or procedures for the purposes of verifying that communications, orders, instructions, or inquiries … are those of [Plaintiffs]." Treasury Mgmt. Servs. Master Agr. (DE 36-2) at p. 6. The Amended Complaint alleged that Defendant "breached the contractual agreements by … not following its own internal procedures that were intended to safeguard Plaintiffs funds." Am. Compl. (DE 36) at ¶ 106. In other words, the Amended Complaint unequivocally alleged that the parties' contract established specific obligations that Defendant did not comply with. Defendant's Motion to Dismiss does not address these allegations.

Defendant does not (and cannot) argue against the fact that the parties' contract imposed an obligation to comply with "certain processes or procedures" to protect Plaintiffs' accounts. Similarly, Defendant does not (and cannot) deny that the Amended Complaint alleges that Defendant breached this obligation by failing to comply with those processes or procedures and providing an unknown person with full access to Plaintiffs' online bank accounts (which occurred before, and is separate from, the subject transfers processed by Defendant).

For this reason alone, Defendant's Motion to Dismiss should be denied.

### B. Count II is not preempted by Article 4A.

Defendant also argues that Count II "is independently preempted by Article 4A … because it is premised on alleged fraudulent wire transfers." Mot. (DE 39) at p. 6.

To be clear, Defendant does not—and cannot—argue that Count II seeks to impose obligations or rights that are ***<u>inconsistent</u>*** with Article 4A. Rather, Defendant merely argues that the unauthorized wire transfers relevant to Count II are "covered specifically by Article 4A" and "Article 4A is the exclusive means of determining the parties' rights, duties and liabilities." Mot. (DE 39) at p. 11.

Defendant is wrong for three independent reasons.

First, the Florida UCC expressly disagrees with Defendant and provides that the common law may supplement the UCC. Second, binding case law expressly disagrees with Defendant and holds that common law claims that are "parallel" to statutory obligations but provide for additional remedies are viable. Third, the parties' contract is consistent with Article 4A and expressly supplements the rights and obligations that are not displaced by Article 4A.

#### 1. The Florida UCC expressly states that the common law may supplement Article 4A so long as the obligation or right is not displaced by Article 4A.

Section 671.103 (i.e., the General Provisions applicable to Article 4A), expressly provides that "[u]nless displaced by the particular provisions of this

code, the principles of law and equity … shall ***supplement*** its provisions." Fla. Stat. § 671.103 (emphases added).[1] Similarly, Section 671.102 (which also applies to Article 4A) provides that "[e]xcept as otherwise provided in this code, the effect of provisions of this code may be varied by agreement." Fla. Stat. § 671.102(2)(a).

"Although indubitably expansive, Article 4A is not exhaustive. The drafters 'intended that Article 4A would be supplemented, enhanced, and in some places, superceded by other bodies of law .... Hence, other sources of law may supplement, but not supplant the provisions of the UCC." *Barak v. ACS Int'l Projects, Ltd.*, 347 So. 3d 81, 84 (Fla. 3d DCA 2021) (citing Fla. Stat. § 671.103).

Article 4A is very clear about what it intends to "displace." For example, Article 4A displaces / preempts parties from contractually agreeing to the following:

- "The right of a beneficiary to receive payment and damages as stated in subsection (1) may not be varied by agreement." Fla. Stat. § 670.404(3).
- "[T]he obligation of a receiving bank to refund payment as stated in subsection (1) may not otherwise be varied by agreement." Fla. Stat. § 670.204(2).

---

[1] Section 671.101 of the Florida Statutes states that the provisions of Chapter 671 (including Section 671.103) "applies to a transaction to the extent that it is governed by another chapter of this code," which includes Article 4A. *See* Fla. Stat. § 671.101.

Article 4A, however, does not displace, preempt, or prohibit parties from contractually agreeing to additional or different remedies for a customer as a "supplement" to Article 4A.

Although Article 4A displaces the parties right to "vary[ ] by agreement" the "right of a ***beneficiary*** to receive payment and damages as stated in [Article 4A]" or the bank's "obligation … to refund payment," Article 4A indisputably does not displace or otherwise prohibit the parties' right to supplement the remedies available to ***customers*** (i.e., Plaintiffs).

**2. Binding law is clear: common law claims that provide for additional remedies consistent with Article 4A are viable.**

To argue "preemption," Defendant relies almost exclusively on a non-codified comment to the UCC, which states that Article 4A is the "exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the article." Mot. (DE 39) at pp. 10, 11, 12. Defendant's reference to this comment does not support dismissal for several reasons.

First and foremost, the Eleventh Circuit has already squarely addressed this comment and unequivocally disagreed with Defendant's contention. Specifically, in *Regions Bank v. Provident Bank, Inc.,* the Eleventh Circuit cited the very same comment that Defendant relies upon and, in the very next sentence, held that "[h]owever, ***Article 4A is not the 'exclusive means*** by which a plaintiff can seek to

redress an alleged harm arising from a funds transfer.' … 'The Article itself is replete with references to common law remedies.' … '[T]he Drafting Committee intended that Article 4A would be supplemented, enhanced, and in some places, superceded by other bodies of law ... the Article is intended to synergize with other legal doctrines.'" 345 F.3d 1267, 1274–75 (11th Cir. 2003) (emphasis added).

The Eleventh Circuit confirmed that the only "preemption" applicable to Article 4A is as follows: "[T]he only restraint on a plaintiff is that 'resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities ***inconsistent*** with those stated in this Article.'" *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274–75 (11th Cir. 2003) (emphasis in original). While Defendant cites to *Regions Bank v. Provident Bank, Inc.* in its Motion to Dismiss, Defendant ignores the clear holding of this case that expressly limits the "preemption" only to claims that are "inconsistent" with Article 4A.

Courts within the Eleventh Circuit have consistently and unanimously disagreed with Defendant's contention that Article 4A somehow preempts any situation it "covers." Rather, the courts within the Eleventh Circuit have consistently held that Article 4A preempts only claims that are ***inconsistent*** with Article 4A.

The Middle District in *Powis Parker, Inc. v. Truist Bank*, for example, dismissed a breach of contract claim as "preempted" precisely because the breach

of contract claim "seeks to impose upon [the bank] an obligation based on the wire transfer itself to ensure that the named beneficiary in the wire transfer matched the account number provided," which obligation was "***<u>inconsistent</u>***" with Article 4A because "section 670.207(2)(a) expressly provides that … [the bank] may rely on the number as the proper identification of the beneficiary." 654 F. Supp. 3d 1256, 1259–60 (M.D. Fla. 2023). As the Middle District confirmed, it dismissed the breach of contract claim "[b]ecause Plaintiff's Breach of Contract claim seeks to create a right, duty, and liability ***<u>inconsistent</u>*** with those set forth in Section 670.207(2)(a)." *Id.* (emphasis added); *see also Doherty v. Regions Bank*, No. 219CV145FTM29MRM, 2019 WL 6700422, at *3–4 (M.D. Fla. Dec. 9, 2019) ("[A] plaintiff's common law claim is preempted by the U.C.C. *only* where such a claim 'create[s] rights, duties and liabilities *inconsistent* with those stated in' the U.C.C." (emphasis in original)).

As explained above, Count II does not raise any obligations or rights that are "inconsistent" with any provision of Article 4A. To the contrary, Count II seeks to raise only rights that the parties agree would supplement Plaintiff's remedies and are expressly authorized under Florida's UCC. *See* Fla. Stat. §§ 671.101, 671.102, 671.103.

### 3. The parties' agreement expressly supplements the parties' rights and obligations consistent with (and without being displaced by) Article 4A.

The parties' agreement similarly expressly states that "[t]he purpose of this document is to … establish rules for certain transactions or events which the law regulates but permits variation by agreement." Terms and Conds., Exhibit 1 to Compl. (DE 36-1) at p. 1.

The parties' agreement does not provide for rights or obligations that are displaced or prohibited by Article 4A. Instead, the parties' agreement supplements the parties' rights and obligations consistent with Article 4A. For example, the parties' agreement provides for "reasonable attorney's fees … incurred as a result of … any other dispute involving [Plaintiffs'] account." *See* Terms and Conds., Exhibit 1 to Compl. (DE 36-1) at p. 2. Moreover, the parties' agreement provides that, in addition to reimbursement under Article 4A, Plaintiffs may recover "actual damages proved that are proximately caused by [Defendant's] failure to exercise ordinary care." *Id.* The parties' agreement also clarifies that, in addition to the reimbursement under Article 4A, Plaintiffs are entitled to seek "[d]amages for any breach of this agreement … limited to those which are direct and lie in contract." *Id.*

In other words, the parties' agreement does not side-step, contradict, conflict, or otherwise conflict with any provision of Article 4A. To the contrary, the

parties' agreement merely supplements the remedies available to Plaintiffs, which is expressly permitted by the plain terms of Florida's UCC. *See, e.g.*, Fla. Stat. §§ 671.101, 671.102, 671.103.

And as explained above, Defendant also separately breached the parties' agreement by not following its contractual obligations before providing a stranger complete access to Plaintiffs' online bank accounts—which is a breach that occurred before, and is separate from, the subject fraudulent transfers.

**CONLCUSION**

For the foregoing reasons, Plaintiffs, K&A ROSARIO HOLDINGS, LLC and MJR FUND I, INC., respectfully request the Court to deny Defendant's Partial Motion to Dismiss Amended Complaint and Motion to Strike (DE 39) and to grant such further relief as the Court deems just and proper under the circumstances.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2026, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

/s/ Victor M. Velarde
Victor M. Velarde
Fla. Bar No. 105620
Email: vvelarde@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Citigroup Center
201 South Biscayne Boulevard, 20th Floor
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

**SERVICE LIST**
**CASE NO. 6:26-cv-1337-CEM-LHP**

David B. Levin
Florida Bar No. 26394
dlevin@bakerdonelson.com
Desislava K. Docheva
Florida Bar No. 1010440
ddocheva@bakerdonelson.com
W. Preston Battle
pbattle@bakerdonelson.com
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
200 East Broward Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 768-1600
Facsimile: (954) 333-3930
*Counsel for Defendant, First Horizon Bank*